Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 583 | **DATE** | 8/13/2010 |
| **CASE TITLE** | Collins vs. Asset Acceptance, LLC | | |

**DOCKET ENTRY TEXT**

Collins' motion (64) for summary judgment is denied, and Asset's motion (60) for summary judgment is granted. The case is therefore dismissed. Status hearing set for 8/20/10 is now vacated.

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

Plaintiff Ricky Collins ("Collins") filed a one-count class action complaint alleging a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, by defendant Asset Acceptance, LLC ("Asset"). A class was certified and the parties' cross motions for summary judgment on liability are pending. For the following reasons, Collins' motion is denied and Asset's motion is granted.

Asset purchases charged off consumer debt from third parties, which it then attempts to collect. On September 30, 2003, Asset sent Collins an initial collection letter for a debt originally incurred to a third party for phone service at a residential address in Indiana. The letter gave notice to Collins that he must pay the debt or dispute its validity within thirty days, otherwise the debt would be presumed valid. Collins did not pay the debt or dispute it at that time.

Asset sent additional letters in 2006 and 2007 to Collins seeking collection of the account to which Collins also failed to respond. Finally, more than four years after he received the initial notice, on January 14, 2008, Collins called Asset to orally dispute the debt, informing Asset that he never lived at the address where the phone service at issue had allegedly been provided. Although Collins did not specifically allege fraud, his account was flagged as disputed due to fraud and Collins was sent a letter requesting information substantiating that dispute. Collins did not respond to the letter. A month later, Asset sent Collins a second, follow-up letter concerning his purported fraud dispute (the "second fraud letter"). It again requested information substantiating his fraud claim, namely, a fraud affidavit or police report.[1] The second fraud letter also explained that if the requested information was not provided within thirty

| **STATEMENT** |
|---|

days, Asset would "consider this particular dispute resolved." (Compl. Ex. A.) Collins did not respond.

Collins seeks summary judgment, arguing unpersuasively that the second fraud letter violates §§ 1692e(2)(A), e(5), and e(10) of the FDCPA because 1) it falsely states that the dispute would be considered "resolved" if Collins did not submit a fraud affidavit or police report, 2) there is no legal basis for Asset to consider the dispute resolved under the circumstances, and 3) Asset sends the fraud letter to consumers who dispute debts without regard to the nature of the alleged dispute for the purpose of stonewalling those consumers. (S.J. Mem. 7.) To start, Collins does not explain how the "dispute resolved" language misrepresents the "the character, amount, or legal status" of the imputed debt under § 1692e(2)(A). The amount of debt is not challenged in the complaint or in his motion, and whether the "particular dispute" is "resolved" is a characterization of the dispute, not of the debt. Collins also fails to explain how the status of a fraud dispute misrepresents the legal status of the debt itself. Accordingly, to the extent his claim relies on § 1692e(2)(A) it does not survive summary judgment.

Similarly flawed is Collins' position that Asset threatened to take action it was not legally entitled to take in violation of § 1692e(5) by declaring that it would consider a consumer's particular fraud dispute resolved unless that consumer submits a police report or fraud affidavit. The letter does not state, as Collins suggests, that the account has been resolved of all disputes, that the debt will be reported to credit agencies as undisputed, or that consumers are no longer allowed to dispute the debt. It merely states that Asset itself will consider that particular fraud dispute resolved if it does not receive the requested documentation, and Collins has not provided any authority indicating that Asset cannot do so. Therefore, Collins' claim also fails under § 1692e(5).

Next, Collins argues that he never told Asset he was a victim of fraud or identity theft in the first place, so the second fraud letter must have been sent to stonewall him and other class members into paying the debt in violation of § 1692e(10).[2] Collins conclusion is premature. The evidence only shows that Collins told Asset he never lived at the Indiana address where the alleged phone service was provided. While this statement does not affirmatively declare fraud, it also does not preclude the reasonable implication of fraud. Collins also points to Asset's practice of continuing to flag accounts as disputed after the second fraud letter is sent, arguing that this practice evidences the falsity of the "dispute resolved" language. In response, Asset claims it only continues to flag the allegedly "resolved" disputed accounts as "disputed" because it maintains a credit reporting obligation under § 1692e(8) to report the debt as disputed despite its internal resolution of the matter. As neither of Asset's positions are objectively unreasonable, at best there is a question of fact as to whether the cited language is false. Regardless, despite questions of fact regarding the truth of the "dispute resolved" language and its alleged violative purpose, Collins has not met his burden in showing that the language is misleading or material. Accordingly, he cannot show Asset violated § 1692e generally, or that it violated the specific conduct described in §§ 1692e(2)(A), (5), or (10).

Again, the second fraud letter only states that Asset will consider the

## STATEMENT

particular fraud dispute identified in the letter resolved if it does not receive the requested documentation. It does not threaten to report anything or suggest the consumer can no longer continue to dispute the debt. Simply put, the "dispute resolved" language is not plainly misleading on its face. Therefore, in order to survive summary judgment, at a minimum, Collins was required to furnish extrinsic evidence showing that an unsophisticated consumer would be confused or misled. *See Ruth v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009). As Collins admits, no such evidence is provided. (Reply 5-6.)

Further, Collins fails to show there is a genuine issue of fact as to the materiality of the "dispute resolved" language. In fact, Collins testified that the only part of the second fraud letter he found confusing was whether or not Asset originated the website directing consumers to a form identity theft affidavit. (Ex. A, Collins Dep. 60-65.) And while Collins also claims to be confused generally as to why Asset believed he was responsible for the debt,[3] there is no evidence that he found the "dispute resolved" language confusing or that it influenced his decision to pay or challenge that debt. *Id; see also Muha v. Encore Receivable Management, Inc.*, 558 F.3d 623, 628 (7th Cir. 2009)(consumers do not need protection against false statements that are immaterial in the sense that they do not influence the decision to pay a debt in response to a dunning letter).

Accordingly, Collins' motion for summary judgment is denied, and Asset's motion for summary judgment is granted. The parties remaining arguments and Asset's motion to strike are moot.

---

1. Collins also claims to have received the same letter in connection with two other accounts he allegedly disputed in the January 14, 2008 phone call. Those accounts are not mentioned in the complaint.

2. Collins does not dispute Asset's assertion that at the end of 2009, it owned 1,754,000 Illinois accounts, but only sent the second fraud letter to "less than a half of a percent of the debtors Asset was seeking to collect from in Illinois." (Def.'s SJ Resp. 3.)

3. Collins provides no authority suggesting Asset was required to validate the debt as a result of his untimely oral dispute. There is also no evidence that Collins ever requested such validation.